JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VINCENT CORTEZ, on behalf of himself and all others similarly situated, and the general public,

Plaintiff,

v.

Centerline Drivers, LLC, et al,

Defendants.

Case No. 5:26-cv-02466-HDV-SPx

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [8]**

## I. INTRODUCTION

The removal of a state court-filed class action based on the Class Action Fairness Act of 2005 ("CAFA") imposes an odd role reversal. The defendant who will ultimately argue that its liability is nonexistent or miniscule must present a picture of exposure over $5 million. Conversely, a plaintiff seeking remand must aver that the class damages will be sufficiently small. But despite these inversions, the assumptions underlying this bizarre *pas de deux* must nevertheless be reasonable and tethered to reality.

Plaintiff Vincent Cortez alleges that his former employer, Defendant Centerline Drivers, LLC ("Defendant" or "Centerline"), violated California's Labor Code by failing to provide required rest and meal breaks, and failing to pay Plaintiff all wages owed to the class. In his Motion to Remand ("Motion"), Plaintiff primarily contests Defendant's assertions that the amount in controversy meets the $5 million requirement under CAF. [Dkt. 8].

For the reasons discussed more fully below, the Court concludes on this record that Defendant has not established that the CAFA amount-in-controversy requirement has been met. The Motion is granted.

## II. BACKGROUND

Centerline employs commercial truck drivers in California and hires out its employees to drive for Centerline's customers. Declaration of Veronica Martinez ("Martinez Decl.") ¶ 3–6. Plaintiff is a former employee who worked as a driver for a total of 67 weeks. *Id.* ¶ 3.

### A. The Complaint

Plaintiff filed his complaint ("Complaint") in Riverside County Superior Court in March 2026. Complaint [Dkt. 1-1]. The Complaint asserts claims for: (1) Failure to Provide Meal Periods, (2) Failure to Provide Rest Periods, (3) Failure to Pay Hourly Wages and Overtime, (4) Failure to Provide Accurate Written Wage Statements, (5) Failure to Timely Pay All Final Wages, (6) Failure to Indemnify, and (7) Unfair Competition. *Id.* The claims window is four years. *Id.* ¶ 16.

The Complaint defines an Hourly Employee Class (consisting of all employees in hourly or non-exempt positions in California), a Meal Period Sub-Class (consisting of all Hourly Employee Class members who worked shifts in excess of five hours), and a Rest Period Sub-Class (consisting

of all Hourly Employee Class members who worked shifts of at least 3.5 hours). *Id.*

Plaintiff alleges that Defendant had a "common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked…" and avers that "Plaintiff and Class Members were required to complete work, such as handing in their final report paperwork, after clocking out of their shifts." Complaint ¶ 25. The Complaint further contends that Defendant "failed to pay Plaintiff and Class Members overtime wages…" and that class members "were required to attend safety trainings on Saturdays (during overtime hours), for which they were not paid at their proper overtime rates of pay[.]" *Id.* ¶ 27. Moreover, Plaintiff alleges that Defendants had a "common policy and practice of systemically denying Plaintiff and Class Members" lawful meal and rest periods*, id.* ¶¶ 28–31, and failed to provide class members with wage statements that complied with California law. *Id.* ¶ 32.

**B. Notice of Removal**

On May 8, 2026, Centerline filed a Notice of Removal. [Dkt. 1]. The Notice of Removal alleges federal jurisdiction under CAFA. Notice of Removal ¶ 1 (citing 28 U.S.C. § 1332(d)). The Notice of Removal avers that all CAFA's requirements are met including "minimal diversity" of the parties, at least 100 class members, and an amount in controversy ("AIC") in excess of $5,000,000. *Id.* ¶¶ 13–17, 20, 24.

In support of removal, Defendant submitted the Declaration of David Penh ("First Penh Decl.") [Dkt. 1-2]. Penh is a "Data Analyst", who has "the ability to run reports on Centerline's non-exempt employees." First Penh Decl. ¶ 2. Penh declared that he "pulled a report of all of Centerline's non-exempt employees who worked in the state of California between March 23, 2022 to the present." *Id.* ¶ 3.

According to Penh's sworn declaration, Centerline employed 864 non-exempt temporary employees in the State of California and issued 8,191 [weekly] paychecks[.]"[1] *Id.* ¶ 3-4. In its calculations of the AIC, Defendant assumed "that each paycheck represents two meal period

---

[1] The Notice of Removal states that Defendant employed "684 employees." Notice of Removal ¶ 31.

violations, two rest period violations, three and a half hours of unpaid regular wages, two hours of unpaid overtime wage, and five dollars ($5.00) in unreimbursed expenses. Notice of Removal ¶ 39. Defendant applied these violation rates to all 8,191 paychecks to arrive at the total below. *Id.* ¶¶ 39, 41, 45, 48, 51, 55, 58, 64.

| **Plaintiff's Alleged Claim** | **Amount in Controversy** |
|---|---|
| Meal Periods | $479,992.60 |
| Rest Periods | $479,992.60 |
| Unpaid Regular Wages | $1,679,974.10 |
| Overtime Wages | $719,988.90 |
| Inaccurate Wage Statements | $784,900.00 |
| Business Reimbursements | $40,955.00 |
| Sub Total | $4,185,803.20 |
| Attorneys' Fees | $1,046,450.80 |
| **Total** | **$5,232,254.00** |

### C. Motion for Remand

Plaintiff argues that the underlying assumptions undergirding the calculation are flawed.[2] Motion at 4. Specifically, Plaintiff contends that Defendant fails to justify its theory that each and every putative class member was subject to (1) four rest or meal period violations per week, (2) three and a half hours of unpaid hourly wages, and (3) two hours per week of unpaid overtime wages. Motion at 4–7. Plaintiff also maintains that the attorney's fees are too high because they are twenty-five percent of the inflated damages figure. *Id.* at 9.

[2] The Motion also argues that the diversity requirement is not met because Defendant failed to allege its citizenship. However, this argument is unavailing because the Notice of Removal sufficiently alleged that "any member of a class of plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C.A. § 1332 (d)(2)(A).

**D. Defendant's Opposition**

Defendant submits two declarations as evidence that its calculation assumptions are reasonable. Veronica Martinez, a Field Payroll Manager for Defendant, states that "Centerline's California commercial truck driver employees almost always work four or five days per week, and only in very unusual circumstances would a Centerline California truck driver work two days per week or less." Declaration of Veronica Martinez ("Martinez Declaration") ¶ 5, [Dkt. 10-1]. According to Martinez, "Centerline's California truck driver employees virtually always work at least five hours per day…. A typical day of driving for Centerline's California drivers is between 6 and 10 hours." *Id.* ¶¶ 5–6.

A second declaration from David Penh ("Second Penh Decl.") states that his first declaration was inaccurate because he "mistakenly restricted the dates range for the report, which resulted in lower than accurate numbers." Second Penh Decl. ¶ 4, [Dkt. 10-2]. Penh now declares, "Between March 23, 2022 through May 10, 2026, Centerline employed more than 1,000 non-exempt employees in the State of California and issued more than 25,000 paychecks." *Id.* ¶ 5. In its opposition to the Motion ("Opposition"), Defendant uses lower violation rates offered by Plaintiff to calculate a new AIC based on 25,000 paychecks, included below. Opposition 10–12 [Dkt. 10].

| Claim | Amount in Controversy |
|---|---|
| Meal Periods | $714,750 |
| Rest Periods | $714,750 |
| Unpaid Regular Wages | $1,108,500 |
| Overtime Wages | $1,072,125 |
| Inaccurate Wage Statements | $1,260,000 |
| Business Reimbursements | $125,000 |
| Sub Total | $4,995,125 |
| Attorneys' Fees | $5,000.00 |
| **Total** | **$5,000,125** |

*Id.* at 12.

## III. LEGAL STANDARD

A defendant may remove a class action from state to federal court by filing a notice of removal that outlines the grounds for removal. 28 U.S.C. § 1453(b); 28 U.S.C. § 1446(a). "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, *see* 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th. Cir. 2014).

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). "In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Id.* at 1197 (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.*

A defendant is only required to file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). However, if a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. The preponderance of the evidence standard requires that "the defendant . . . provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (internal quotations omitted). The parties may submit evidence, including declarations or affidavits, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra*, 775 F.3d at 1197 (internal quotations and citation omitted). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

"CAFA's requirements are to be tested by consideration of real evidence and the reality of

what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. Evidence proffered "may be direct or circumstantial," and "may require a chain of reasoning that includes assumptions" not "pulled from thin air" but with "reasonable ground underlying them." *Id.* at 1199. "Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Id.*

In addition, attorney's fees may be included in the amount in controversy. "[I]f the law entitles the plaintiff to future attorneys' fees if the action succeeds, then there is no question that future attorneys' fees are at stake in the litigation, and the defendant may attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations, brackets, and citation omitted). Further, "a court's calculation of future attorneys' fees is limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id.* at 796.

## IV. DISCUSSION

### A. Number of Class Members

In its original Notice of Removal, Defendant stated that it issued 8,191 paychecks to "non-exempt temporary employees" during the relevant time period. Notice of Removal ¶ 32. Defendant used this number of paychecks to calculate potential damages for meal and rest period violations and unpaid regular and overtime pay. Notice of Removal ¶¶ 41, 45, 48, 5.

Plaintiff argues that for Defendant to assume, without explanation or evidentiary support, that every class member worked long enough to be eligible for those damages is unreasonable. Motion at 4. By challenging their truth, Plaintiff mounts a factual attack on Defendant's AIC allegations. To overcome this challenge, Defendant must produce sufficient evidence to show that the assumptions underlying its calculations are reasonable. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) ("When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold.").

To that end, Defendant produced a declaration from a "Field Payroll Manager" stating that

"Centerline's California commercial truck driver employees almost always work four or five days per week," and "Centerline's California truck driver employees virtually always work at least five hours per day." Martinez Decl. ¶¶ 5.

But the declarant does not explain ***how*** she came to those conclusions. The declaration only states that she "reviews records for Centerline's hourly employees in California and [is] familiar with Centerline's business practices, the services it offers customers, and its operations. [She has] reviewed Plaintiff Vincent Cortez's ("Plaintiff") records." *Id.* ¶ 2. In addition, Defendant provides no specific records or data to support the "almost always" and "virtually always" statements. Despite having access to its own employment records, Defendant provided only vague assertions. To satisfy the standard, Defendant would need to provide more detailed evidence of how many employees were members of the Meal Period Sub Class, Rest Period Sub Class or were owed unpaid overtime. *See Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number.") Because "evidence regarding the total number of violation-eligible shifts…is often readily available" and an employer is generally "able to turn to its payroll system and quickly pull a list of all employees who worked during a given period[,]" the absence of such evidence here undermines the reasonableness of Defendant's assumptions. *See Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1101 (2024) ("Because California law mandates breaks only when employees work shifts of a certain length, courts generally require defendants to provide evidence showing the number of shifts worked by the putative class that were long enough to 'permit[] meal and rest breaks.'").

The Ninth Circuit's opinion in *Harris v. KM Industrial*, 980 F.3d 694 (9th Cir. 2020) is instructive. In *Harris*, the plaintiff alleged claims "on behalf of specific classes and subclasses, each with its own eligibility criteria derived from particular California Labor Code provisions[,]" and on that basis "defined the Hourly Employee Class more broadly than the two subclasses." *Id*. at 701. The Court pointed out that "[n]othing in the complaint indicated that all members of the Hourly Employee Class were members of the Meal Period Sub-Class or the Rest Period Sub-Class" or that

all class members "worked shifts that would qualify them as members of the two subclasses." *Id.* That same analysis applies here. The fact that the Complaint includes subclasses implies that not all class members share the same eligibility. And Defendant's failure to provide sufficient evidence for its central assumption—namely, that all paychecks issued to all non-exempt employees included violations—renders its calculations unsupported and unreasonable. *See id.* (finding defendant's assumption that all class members were also members of the subclasses unreasonable where defendant failed to provide supportive evidence).

The Opposition further muddies the waters with new and inconsistent evidence that the putative class includes "more than 1,000 non-exempt employees" who were issued "more than 25,000 paychecks[.]"[3] Second Penh Decl. ¶ 5. The declarant's explanation for this ***enormous*** discrepancy between the Notice of Removal and the Opposition is purportedly that he "mistakenly restricted the dates range for the report, which resulted lower than accurate numbers." *Id.* ¶ 4. But at the hearing, defense counsel was unable to satisfactorily explain the discrepancy. Similarly, there is no explanation for how an increase of only 136 employees, from 864 to 1000, resulted in a corresponding increase of 16,809 paychecks. The Court finds on this record that the amended figures lack credibility.

**B. Violation Rates**

Plaintiff's Motion also argues that the violation rates used in the Notice of Removal are unreasonably high and unsupported by the Complaint allegations. The Court agrees with this point at least as it pertains to the violation rates for unpaid and overtime wages. Regarding rest and meal period violations, the rate asserted in the Notice of Removal is not *per se* unreasonable.

---

[3] Notably, the original 864 putative class members were "non-exempt temporary employees," while the newly presented putative class members are "non-exempt employees." *Compare* First Penh Decl. ¶ 3 *with* Second Penh Decl. ¶ 5. "In California, Centerline employs ***temporary commercial truck drivers*** and ***permanent administrative employees*** who recruit drivers, service accounts, and provide operational support. Administrative employees in California who are nonexempt and paid by the hour work full time, Monday through Friday." Martinez Decl. ¶ 4 (emphasis added). At the Hearing, the Court inquired whether the increase in number of putative class members presented by Defendant's opposition was a result of including administrative employees. However, defense counsel represented that the class members are all truck drivers.

**1. Rest and meal periods**

The Complaint alleges that Defendant had a "policy and practice" of denying meal and rest periods. Complaint ¶¶ 28, 30. The Motion argues that the 40% violation rate initially used in the Notice of Removal is unreasonable and posits that a 20% violation rate is appropriate. Motion at 5. Courts in the Ninth Circuit have found violations rates of 20% to 60% reasonable for similar allegations and claims.[4]

**2. Failure to pay hourly wages**

According to the Complaint, Defendant had a "common policy and practice of systemically failing to pay Plaintiff and Class Members proper wages and overtime for all hours worked…Plaintiff and Class Members were required to complete work, such as handing in their final report paperwork, after clocking out of their shifts." Complaint ¶ 25. The Notice of Removal assumed that all putative class members worked for three-and-a-half hours of unpaid time per week. Notice of Removal ¶ 48. Plaintiff argues that his allegations support only a violation rate of *one hour* per week. Motion at 6. The Court agrees that on this record one hour of weekly unpaid time is the reasonable violation rate for purposes of CAFA analysis.

**3. Overtime**

The Notice of Removal assumes that class members worked two hours of overtime per week without appropriate compensation. Notice of Removal ¶ 51. Given the Complaint allegations, this assumption is too high. In addition, one violation (one hour of overtime) per week "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement." *Kastler v. Oh My Green, Inc.*, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) (accepting an assumption of "one hour of … unpaid overtime *per week* per class member") (emphasis added), *Chavez v. Pratt (Robert Mann Packaging)*, LLC, 2019 U.S. Dist. LEXIS 59399,

---

[4] *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (assumption of one missed meal period and one missed rest period per week was reasonable where complaint alleged employer "regularly and consistently failed to provide uninterrupted meal and rest periods"); Evers v. La-Z-Boy Inc., No. 21CV2100-LL-BLM, 2022 WL 2966301, at *5 (S.D. Cal. July 27, 2022) (collecting cases where violations rates ranging from 25% to 60% can be reasonably assumed as a matter of law based on "pattern and practice" or "policy and practice" allegation).

at *12 (N.D. Cal. Apr. 5, 2019) (accepting an assumption of "30 minutes of unpaid overtime per putative class member *per week*) (emphasis added), *Trigueros v. Stanford Fed. Credit Union*, 2021 U.S. Dist. LEXIS 120271, at *11–12 (N.D. Cal. June 28, 2021) (accepting a 20% violation rate and assumption a 0.5 multiple for "the difference between the straight-time rate and the overtime rate"), *Ramirez v. Cornerstone Bldg. Brands,* 2022 U.S. Dist. LEXIS 63673, at *11 (E.D. Cal. April 4, 2022) (accepting an assumption of overtime rates of "30 minutes *weekly*") (emphasis added). Therefore, an assumed violation rate of one hour per week for unpaid overtime is reasonable for the AIC calculations.

**C. Amount in Controversy**

In short, the Court finds that while Defendant has had ample opportunity to provide support for its CAFA assumptions, it has failed to do so. Defendant has failed to meet its burden given the numerous discrepancies in its assumptions. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 995–96 (9th Cir. 2022) ("Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden.").

Lest there be any doubt, however, the Court hereby recalculates the amount in controversy assuming reasonable violation rates. The Court disregards the class size and number of paychecks proffered in the Opposition as unsupported for the reasons discussed above. For the calculation, the Court uses the 8,191 paychecks initially provided in the First Penh Declaration[5].

[5] As discussed above, Defendant's assumption that all 8,191 paychecks included violations is unsupported by its evidence and, therefore, will yield an inflated AIC.

The calculations are as follows.

- **Meal and Rest Periods**: $959,985.20[6]
- **Unpaid Regular Wages**: $239,996.30[7]
- **Liquidated Damages for Unpaid Wages**: $130,892.18[8]
- **Unpaid Overtime Wages**: $359,994.45[9]
- **Failure to Provide Accurate Wage Statements**: $196,225.00[10]
- **Failure to Indemnify (Business Reimbursements)**: $40,955.00[11]
- **Attorney's Fees**: $482,012.03[12]
- **Total**: **$2,410,060.16**[13]

---

[6] Four violations per week multiplied by hourly wage multiplied by number of paychecks (4 x $29.30 x 8,191 = $959,985.20). *See* Cal. Lab. Code § 226.7(c) ("If an employer fails to provide an employee a meal or rest or recovery period in accordance with the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.")

[7] One hour per week of unpaid work multiplied by hourly wage multiplied by number of paychecks (1 x $29.30 x 8,191 = $239,996.30).

[8] One hour per week of unpaid minimum wage multiplied by average minimum wage in California between 2022 and 2026 multiplied by number of paychecks (1 x $15.98 x 8,191 = $130,892.18). *See* Cal. Lab. Code § 1194.2 (a) ("In any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid.")

[9] One hour per week of unpaid overtime multiplied by overtime pay rate multiplied by number of pay checks (1 x $43.95 x 8,191 = $359,994.45)

[10] The Court agrees with and uses Plaintiff's wage estimate calculation, which accounts for the one-year statute of limitations for wage statement penalties. *See* Cal. Lab. Code § 226; Cal. Civ. Proc. Code § 340.

[11] Defendant calculated this assuming class members were each owed $5.00 per paycheck (8,191 x $5.00 = $40,955). Notice of Removal ¶ 58. Plaintiff did not dispute Defendant's assumptions or calculations for this AIC. The Motion mistakenly states $140,955.00 as the AIC for the failure to indemnify claim proffered by Defendant. Motion at 11.

[12] Calculated at twenty-five percent of the subtotal.

[13] Notably, using the overestimate of 8,191 paychecks to calculate the AIC yields less than half of

Defendant has not shown by a preponderance of the evidence that the AIC is greater than or equal to $5,000,000. Therefore, remand is warranted.

## V. CONCLUSION

For the foregoing reasons, the Motion is granted and the action remanded to Riverside County Superior Court.

Dated: September 1, 2026

Hernán D. Vera
United States District Judge

---

CAFA's requirement. A more reasonable assumption for the number of paychecks per putative subclass would yield an even smaller AIC.